```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DYLAN SCOTT PIERCE,                    :
                                       :
           Plaintiff,                  :   CIVIL ACTION
                                       :
     v.                                :   No. 07-cv-4150
                                       :
QVC, INC.                              :
                                       :
           Defendant.                  :
```

## MEMORANDUM AND ORDER

**Joyner**, J.                                         **May 5, 2008**

Presently before the Court is Defendant QVC's Motion to Dismiss Plaintiff's Complaint (Doc. No. 2), Plaintiff Dylan Scott Pierce's Reply (Doc. No. 4), and Defendant's Reply (Doc. No. 6). For the reasons set forth below, the Court GRANTS Defendant's motion.

### I. BACKGROUND

Plaintiff, Dylan Scott Pierce, is a young artist who creates nature- and wildlife-related artwork that provides the basis for products developed, manufactured and sold by a company called Cottage Gardens, Inc. Defendant QVC markets and sells a variety of products through various means including, notably, its Direct

1

Response Television Programs, which allows customers to order the promoted products by various means such as by telephone.

*The Agreement*

On February 28, 2003, QVC and Cottage Garden entered into a license agreement granting QVC both exclusive and non-exclusive rights to promote Cottage Garden's "licensed art reproductions of the work of Dylan Scott [Pierce]," referred to in the agreement as the "Products." Under the terms of the agreement, Cottage Garden granted to QVC the exclusive right to promote the Products on its Direct Response Television Programs and a non-exclusive right to promote the Products on "other means and media."[1] Cottage Garden also granted to QVC the right to use, in connection with its promotion of the Products, any trademarks or logos related to the Products.

---

[1] The agreement defined "Direct Response Television Programs" as:
> any televised program which requests a consumer to respond to any promotion of any product or service by mail, telephone or electronic means, which program: (A) is live; (B) contains an intermittent or continuous call to action; (C) devotes at least twenty percent of its programming time to the promotion of products or services; or (D) is otherwise in the style of a televised retailing program.

Agreement, p. 1 para. 1(a).

With respect to purchases of the Products, the parties agreed that Cottage Garden would accept any purchase orders issued by QVC as orders for the purchase of the ordered Products on a "100% Sale or Return" basis.  However, the agreement also expressly stated that it "does not obligate QVC to purchase any Products from [Cottage Garden] or to Promote or sell any Products."  Agreement, p. 2, para. 2(a).  Furthermore, under the agreement QVC "expressly reserve[d] the right to promote products which are in competition" with Cottage Garden's products, and made "no representations or warranties" with respect to the amount of, or revenue from, Products sold on its programs, or the "number of times, if any" that the Products would be offered on QVC programs.  Id.

Portions of the agreement were also directed to a "Spokesperson" who would make appearances at QVC's request to promote the Products.  Specifically, the agreement expressly noted that Cottage Garden and QVC desired that "Mark Timm and Dylan Scott Pierce, a representative of [Cottage Garden] (or any other mutually agreed upon spokesperson, hereinafter referred to as the "Spokesperson"), appear on certain of the Programs to assist QVC in promoting the Products. Agreement, p. 1.  Under the agreement, the Spokesperson granted to QVC the exclusive right to use his name and likeness to promote the Products on

Direct Response Television Programs and a non-exclusive right to use his name and likeness to promote the Products through other "means and media." Agreement, p. 2, para. 1(b). The Spokesperson also agreed that if requested by QVC, he would make at least eight appearances on its Programs to make "promotional announcements" during each year the agreement was in effect. Agreement, p. 4, para. 4(a). However, it was also explicitly stated that "QVC makes no representations or warranties with respect to the number of Appearances, if any, that it may request the Spokesperson to make." Id. The agreement expressly indicated that the Spokesperson would be compensated by Cottage Garden, and that the Spokesperson agreed that this would be sufficient consideration for the grant of license to use his name and likeness and for the promotional appearances made on QVC programs. Agreement, p. 4, para. 4(c). Both Mark Timm and Dylan Scott Pierce signed the agreement, agreeing to be bound by the specific provisions in the agreement that related to the Spokesperson.[2]

---

[2] Specifically, Mr. Timm and Mr. Pierce agreed to be "personally bound by the provisions set forth in paragraphs 1(b), 2(b), 3, 4, 5, 6(b), 7, 8, and 9 of the [Agreeement]. The provisions in paragraphs 1(a), 2(a), and 6(a), to which Pierce and Timm did not agree to be bound, expressly addressed parts of the agreement that were between Cottage Garden and QVC.

The Initial Term of the Agreement was to be for one year, to commence on the date any Product first aired on any QVC Program. Agreement, p. 3, para. 3(a). The Agreement provided that it would automatically renew for additional one-year terms in perpetuity, unless (1) either party notified the other, in writing, at least thirty days before the end of the existing Term of its intent to terminate the Agreement, and (2) net retail sales of the Products during the existing term were less than a "Minimum Amount" which was defined as $600,000 for the Initial Term and 105% of the Minimum Amount for each succeeding Term. Id.

*This Lawsuit*

On October 3, 2007, Plaintiff filed his Complaint in this Court alleging two claims based on breach of contract. Plaintiff asserts that QVC first promoted products featuring his artwork, pursuant to the Agreement, on April 28, 2003, thereby beginning the Initial Term and setting the Term expiration date at April 28, 2004. Plaintiff claims that no notice was given at least thirty days before the end of the Initial Term of the intent to cancel, the Minimum Amount of $600,000 was met, and therefore the Agreement automatically renewed for another Term. However, according to Plaintiff, on or about May 3, 2004, agents of QVC

5

informed Mark Timm at Cottage Gardens that it would "no longer promote, market and sell Mr. Pierce's artwork and products on its Direct Response Television Programs due to Mr. Pierce's recent diagnosis of autism."  Plaintiff asserts that this notice of "termination" of the Agreement breaches a duty of good faith and fair dealing that was owed to him by QVC under Pennsylvania common law and Pennsylvania statute.

## II. STANDARD OF REVIEW

In response to a pleading, under Federal Rule of Civil Procedure 12(b)(6), a Defendant may assert by motion that the Plaintiff's complaint "[fails] to state a claim upon which relief can be granted."  In analyzing a Rule 12(b)(6) motion to dismiss, we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)(citations omitted). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'"  Id. at 232 (quoting Bell Atl. Corp. v. Twombley, 127 S. Ct. 1955, 1965 (2007)).  In other words, the plaintiff must provide "enough facts to raise a reasonable expectation that

6

discovery will reveal evidence of the necessary element[s]" of a particular cause of action.  Id. at 234.  In ruling on a Rule 12(b)(6) motion to dismiss, the court may consider documents "integral to or explicitly relied upon in the complaint." In re Rockefeller Sec. Lit., 184 F.3d 280, 287 (3d Cir. 1999).

### III. DISCUSSION

Plaintiff's Complaint comprises two counts grounded in an alleged breach of the duty of good faith and fair dealing owed by QVC under the Agreement.  First, Plaintiff asserts that in "terminating" the Agreement after it had already renewed for another Term, QVC breached the duties of good faith and fair dealing in the performance of the Agreement as contained in the Restatement (Second) of Contracts and adopted by Pennsylvania courts.  Second, Plaintiff contends that QVC's actions violate the Pennsylvania Uniform Commercial Code, which provides that every contract "imposes an obligation of good faith in its performance," 13 Pa. Cons. Stat. § 1203, and that under an exclusive dealing arrangement, the buyer has a duty to use its best efforts to promote the seller's product, 13 Pa. Cons. Stat. § 2306(b).

A.   Implied Duties of Good Faith and Fair Dealing

Pennsylvania courts have adopted the general duty of good faith and fair dealing in the performance of a contract as found in the Restatement (Second) of Contracts § 205, see, e.g., Somers v. Somers, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992), and Pennsylvania's Uniform Commercial Code, 13 Pa. Cons. Stat. § 1203, imposes a similar requirement.[3]  The U.C.C., as codified in Section 1203, provides that "[e]very contract or duty within this title imposes an obligation of good faith in its performance or enforcement."  "Good faith" is defined by statute as "[h]onesty in fact in the conduct or transaction concerned."  13 Pa. Cons. Stat. § 1201.  As Pennsylvania courts and the Third Circuit have explained, however, "[t]he obligation to act in good faith in the performance of contractual duties varies somewhat with the context."  Somers, 613 A.2d at 1213; See also Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 617 (3d Cir. 1995).

---

[3] For purposes of Defendant's Motion to Dismiss, we will consider both Counts of Plaintiff's Complaint together.  They arise out of the same facts, and the conduct Plaintiff lists as constituting a breach of the duty of good faith is identical for both counts.  Furthermore, Pennsylvania courts have essentially read the related common law principles into the U.C.C. provisions that provide for a duty of good faith.  See Somers, 612 A.2d at 1213 (analyzing common law duty of good faith claim based on Restatement and U.C.C. in tandem); see also Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 617 n. 13 (3d Cir. 1995)("Pennsylvania courts applying the U.C.C. definition of good faith generally use common law contract principles.").

Noting the U.C.C. definition of good faith, the Restatement explains that "[g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party . . . ." Restatement (Second) of Contracts § 205 Cmt. a.  The Third Circuit has explained:

> With rare exception, the courts use the U.C.C. good faith requirements in aid and furtherance of the parties' agreement, not to override the parties' agreement for reasons of fairness, policy, or morality. Thus, courts generally utilize the good faith duty as an interpretive tool to determine the parties' justifiable expectations, and do not enforce an independent duty divorced from the specific clauses of the contract.

Duquesne Light Co., 66 F.3d at 617 (interpreting the good faith requirement found in Pennsylvania's Uniform Commercial Code). Furthermore, the U.C.C. comment accompanying 13 Pa. Cons. Stat. § 1203 notes that "the doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached."  In fact, the Third Circuit and this Court have recognized an *independent* duty of good faith under Pennsylvania law only in "limited situations," such as a confidential or fiduciary relationship.  Id. at 618; Northeast

9

<u>Jet Center, Ltd. v. LeHigh-Northampton Airport Auth.</u>, 1996 WL 442784, at *18 (E.D. Pa. Aug. 1, 1996).

With the meaning of Pennsylvania's good faith requirement in mind, we cannot find any such duty owed by QVC to Pierce in the Agreement, and in fact such a duty would only contradict the "justified expectations" of the parties as they are evidenced by the clear terms of the Agreement. As an initial matter, the Agreement expressly states that QVC does not promise to promote the products which Pierce claims they must use good faith in deciding whether to promote. Paragraph 2(a) explicitly states: "This Agreement does not obligate QVC to purchase any Products from [Cottage Garden] or to Promote or sell any Products." That paragraph also states that QVC

> makes no representations or warranties with respect to (i) the amount of Products that may be sold through the Programs, *if any*, (ii) the number of times, *if any*, the Products may be offered for sale on the Programs, or (iii) the amount of revenue, *if any*, that may be generated through any sales of Products on the Programs.

Agreement, p. 2, para. 2(a) (emphasis added). QVC also explicitly disavowed any obligation to have Pierce - or *any* spokesperson - appear on its Programs to promote Cottage Garden products, as the Agreement states that "QVC makes no representations or warranties with respect to the number of Appearances, *if any*, that it may request the Spokesperson to

make." Agreement, p. 4, para. 4(a) (emphasis added). In sum, the clear terms of several provisions in the Agreement clearly demonstrate that the parties expected that QVC could make decisions about how to allocate scarce time on its Programs in a way that did not involve buying or promoting Cottage Garden's products. Furthermore, we note that Mr. Pierce was not even a party to those provisions of the Agreement (Paras. 1(a) and 2(a)) dealing with *Cottage Garden's* grant to QVC of the rights to promote its products and *Cottage Garden's* promise to accept any purchase orders QVC "*may* issue" to the Company.[4] And while Mr. Pierce did promise to appear on QVC to promote Cottage Garden products at QVC's request (para. 4(a)), he also explicitly agreed that "sufficient consideration" for that promise and his grant of the use of his likeness would be compensation by Cottage Garden. Mr. Pierce asks that in the face of all of the evidence demonstrating the parties' expectations about their arrangement, this Court should read into the Agreement a duty of good faith on the part of QVC. For us to do so in this case would not "utilize the good faith duty as an interpretive tool to determine the

---

[4] Indeed, on the signature page of the Agreement (page 9), Mr. Pierce expressly enumerated the provisions by which he agreed to be bound. Paragraphs 1(a) and 2(a), as well as paragraph 6(a), were not in that list, indicating that he was not a party to those provisions.

11

parties' justifiable expectations"; rather, it would "override the parties' agreement for reasons of fairness, policy, or morality." Duquesne Light Co., 66 F.3d at 617.  As the Third Circuit has explained, this would be contrary to the meaning of the duty of good faith found in the Restatement and Pennsylvania's U.C.C.

B.   Good Faith Duty Based on Exclusive Dealing

Count II of Plaintiff's Complaint also alleges that based on the Pennsylvania U.C.C., 13 Pa. Cons. Stat. § 2306(b), "under an exclusive dealing arrangement, such as the arrangement between Mr. Pierce and Defendant QVC, the buyer (Defendant QVC) has a duty to use its best efforts to promote the seller's product." P. Compl. p. 6, para. 38.  Pennsylvania's U.C.C. states that "[a] lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale."  13 Pa. Cons. Stat. § 2306(b).  Plaintiff argues that this provision imposes a duty on QVC to act in good faith when deciding whether to promote the products covered by the Agreement.

As an initial matter, we note that Plaintiff's claim in Count II of the Complaint that Pierce granted exclusive rights to QVC to "promote, market, sell and/or distribute" his artwork through Direct Response Television Programs is clearly contrary to the Agreement.  As we have already noted, Pierce himself was not even a party to the provisions by which *Cottage Garden* granted such rights to QVC.  But inexplicably, Cottage Garden is not a party to this action, and Pierce only granted to QVC the right to use his likeness in promoting products made by Cottage Garden and a promise to appear on QVC's programs at its request.  Thus, as he does not contend that he was a third party beneficiary of the Agreement, Pierce can only claim that he was owed a duty of good faith based on his grant of exclusive rights to QVC, in paragraph 1(b), to use his name and likeness on its television programming.

More importantly, however, QVC owed no duty based on exclusive dealing under *any* provisions - even those to which Pierce did not agree to be bound - because the parties expressly agreed otherwise.  Section 2306 provides that an exclusive dealing arrangement imposes a duty to use best efforts to promote the seller's products "*unless otherwise agreed*."  As we noted above, QVC expressly disavowed any obligation to purchase or promote Cottage Garden products or to have Mr. Pierce (or some

other Spokesperson) appear on its programming for promotional purposes. As the parties have clearly "otherwise agreed," Section 2306 of Pennsylvania's U.C.C. does not impose a duty upon QVC to use its "best efforts" to promote Cottage Garden products.[5] Accordingly, Plaintiff's claim based on that statutory provision must also be dismissed.

C. Conclusion

Because QVC owed no duty to Pierce, under the terms of the Agreement, to promote and/or buy Cottage Garden's products, or to use good faith in doing so, Pierce has not pleaded a claim for breach of contract based on Pennsylvania's requirement of good faith upon which relief could be granted. See Williams v. Nationwide Mut. Ins. Co., 750 A.2d 881, 884 (Pa. Super. Ct. 2000) (breach of contract claim requires pleading breach of a duty

---

[5] We furthermore note that the arrangement created by the Agreement here is not truly an "exclusive dealing" of the type that would traditionally impose a duty of good faith on the buyer. The only "exclusivity" involved with respect to Cottage Garden's products was the exclusive right to promote those products on Direct Response Television Programs. Cottage Garden and Mr. Pierce were free to sell their products to other buyers and through different media (through which QVC was granted only a *non*-exclusive right to promote), and thus their compensation and profits were not entirely dependent on whether QVC used "best efforts" in promoting those products. However, as the duty cannot be imposed on QVC because the parties otherwise agreed, we need not decide the question of whether Section 2306 is implicated in the first instance.

imposed by the contract in question).  Accordingly, Defendant's Motion to Dismiss must be GRANTED.

An order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
DYLAN SCOTT PIERCE,                  :
                                     :
          Plaintiff,                 :    CIVIL ACTION
                                     :
     v.                              :    No. 07-cv-4150
                                     :
QVC, INC.,                           :
                                     :
          Defendant.                 :
```

ORDER

AND NOW, this 5th day of May, 2008, upon consideration of Defendant's Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 2), and responses thereto, for the reasons stated in the accompanying memorandum, it is hereby ORDERED that the Motion is GRANTED and Plaintiff's Complaint (Doc. No. 1) is DISMISSED.

BY THE COURT:

s/J. Curtis Joyner
J. CURTIS JOYNER, J.